DECISION
{¶ 1} Defendant-appellant, William Parrish, appeals a decision of the Butler County Common Pleas Court convicting him of charges resulting from two separate incidents involving stolen vehicles. We affirm the trial court's decision.
 {¶ 2} The first incident occurred on November 17, 1999. Hamilton police officers noted a reported stolen vehicle in a motel parking lot. They verified that the vehicle, a 1989 Nissan 240 two-door hatchback, was still reported stolen. They watched the vehicle, and in a short time someone drove it out of the parking lot. The officers followed in pursuit and activated their overhead lights to initiate a traffic stop. The driver of the vehicle u-turned and then sped away. The officers pursued the vehicle. Other officers joined in the pursuit. The pursuit ended when the stolen car collided with a police cruiser.
 {¶ 3} The driver of the vehicle, appellant, would not exit when ordered. One officer came upon the passenger side and saw appellant moving between the driver and passenger seat of the vehicle. He commanded appellant to show his hands. Appellant would show them and then "would make a move to his left side which was the driver's side of the vehicle." This occurred approximately three times. The officer could not see what appellant "was doing over [in the driver's seat]." Finally, the officer reached the locked passenger door and attempted to open it, but the handle broke off in his hand. Using his nightstick, he broke the window. The officer, with help from other officers, pulled appellant out of the vehicle through the window and arrested him.
 {¶ 4} At the same time, another officer was approaching the vehicle from the driver's side. He noted a gun in the fold of the driver's seat. The officer testified that the door was locked, so he broke the window and retrieved the fully loaded gun. Another officer retrieved what he believed to be a crack pipe wrapped in a towel from above the sun visor of the stolen vehicle. Appellant was charged with: receiving stolen property-motor vehicle, carrying a concealed weapon loaded, two counts of having weapons while under disability, failure to comply, improper handling of a firearm, illegal use of or possession of drug paraphernalia, and driving when license suspended or revoked.
 {¶ 5} On February 15, 2000 appellant was brought to trial on the charges resulting from the first incident. The trial court appointed J. Gregory Howard, appellant's first appointed attorney, to represent appellant. Upon appellant's request, the trial court allowed appellant to waive time, release Howard as his attorney and hire his own attorney. This trial date was vacated and the trial date then reset for March 27, 2000.
 {¶ 6} The second incident occurred on March 12, 2000. While on bond for the first incident, appellant was again arrested on similar charges. He again fled from the police in a stolen vehicle, a 1990 Toyota, after they attempted to initiate a traffic stop. The police pursed him and appellant eventually left the car and was caught by police who chased him on foot. Appellant was charged with: receiving stolen property-motor vehicle, driving when license suspended or revoked, failure to comply, two counts of stop sign violation, and two counts of disobeying traffic control devices.
 {¶ 7} On March 20, 2000, David Kash, a second appointed attorney, represented appellant before the trial court on a question of bond resulting from the first incident. At this time, Kash requested that the trial court remove him from the case. In his explanation to the court he stated, "He's already made sparaging [sic] comments that I, I just — I can't — if he's going to hire counsel, he's already said he's going to hire counsel. He says he doesn't want any quote damn, uh, uh —." The trial court granted Kash's request and appointed Richard Hurchanik to represent appellant.
 {¶ 8} On April 3, 2000, Richard Hurchanick represented appellant on the charges from the first incident. He was appellant's third appointed attorney. He explained to the trial court that appellant no longer wanted his representation. The following discourse occurred following this statement:
 {¶ 9} "BY THE COURT: Is that correct Mr. Parrish?
 {¶ 10} "MR. PARRISH: Yeah, when any lawyer tells you he wants you to stay locked up I feel that —
 {¶ 11} "MR. HURCHANICK: We also have a problem, I want off the case, your Honor because my client is misrepresenting what I am saying so I cannot represent a client —
 {¶ 12} "MR. PARRISH: That's what you told me.
 {¶ 13} "MR. HURCHANICK: — that I believe is misrepresenting what I'm saying.
 {¶ 14} "MR. PARRISH: That's what you told me.
 {¶ 15} "MR. HURCHANICK: My statement was —
 {¶ 16} "MR. PARRISH: I didn't misunderstand that.
 {¶ 17} "MR. HURCHANICK: — for the record, your Honor, my statement is what I tell all my clients. As an attorney I prefer my client in jail because I know where to find him, and he doesn't get in anymore trouble. I also told him that of being third attorney in the string I doubt I could get you out of Judge Rosmarin's bond situation or out of jail. I said I'm the third on string. I would bet money that he would stay in jail. Now I realize that you want out, but the realities are probably that you will not be out. Words to that affect your Honor. He heard what he wanted to heard [sic]. He also had an altercation with Judge Rosmarin, so I would rather not represent anybody that uh, misconstrues what I tell them."
 {¶ 18} Thereafter, the trial court allowed Hurchanick to withdraw as counsel for appellant. The trial court then set a new trial date of March 26, 2000.
 {¶ 19} On April 22, 2000,[1] Monica Spohn, who was hired by appellant, represented him at trial on the first set of charges. Spohn was not representing appellant on the second set of charges. Appellant requested that his trial be continued. Appellant signed a time waiver and a new trial date was set for June 8, 2000.
 {¶ 20} On June 7, 2000, appellant appeared for trial on the second set of charges from the incident on March 12, 2000. Richard Hart, appellant's fourth appointed attorney, was appointed as counsel for appellant in this case. At a bench conference during voir dire, Hart indicated to the trial court that appellant wished to represent himself. The trial court then appointed Hart as appellant's advisor. Hart stated, "[h]e'll probably object to that." The voir dire then resumed.
 {¶ 21} Appellant then stated in court in the presence of this jury that Hart had seen him only the day prior and that he did not believe that he was prepared for trial. The jury was then asked to leave the courtroom. A discussion took place wherein Hart stated that appellant would not sign a time waiver. Appellant then later replied, "If you want me to sign a time waiver, I'll sign time waivers. It don't matter. I mean, I'm not going to sit here and get railroaded on some hyped up misdemeanors. Which I was arrested for in the first place was a misdemeanor. I don't know how it turned into felonies."
 {¶ 22} Hart then asked to withdraw as appellant's counsel. The trial court allowed him to withdraw and appointed Ron Morgan to represent appellant. The following discourse then occurred:
 {¶ 23} "BY THE DEFENDANT: Who? Ron Morgan?
 {¶ 24} "BY THE COURT: Ron Morgan.
 {¶ 25} "BY THE DEFENDANT: We don't get along (UNCLEAR).
 {¶ 26} "BY THE COURT: Well, you and a bunch of attorneys don't get along. I'm running out of attorneys, sir.
 {¶ 27} "BY THE DEFENDANT: Sorry.
 {¶ 28} * * *
 {¶ 29} "BY THE COURT: Well, then the Court will try to find an attorney to represent you. At that point in time then I will set this over for another hearing. * * *"
 {¶ 30} On June 8, 2000, appellant appeared before the court, still represented by Monica Spohn, for his trial relating to the first incident. The jury had been sworn in and were awaiting voir dire. Appellant filed a motion for a change of venue alleging bias and prejudice of both the judge and prosecutor. The trial court overruled his motion. Further, Spohn stated, "A conflict has arisen between me and my client. I feel like uh, it is not in his best interest for me to continue on this case. He has specifically instructed me to withdraw." The trial court allowed Spohn to withdraw as counsel, but appointed her to act as appellant's advisor so that the trial could continue. Appellant noted that none of his witnesses were present and the court reminded him that the trial had been set "for some period of time." Appellant became upset and at one point told the trial court that, "Well, yeah. I'm going to act up and show my black ass."
 {¶ 31} When appellant refused to behave properly, the trial court set up a separate room with a video and audio feed so that appellant could participate in his trial without being in the courtroom. When the bailiff attempted to take him up to the room he stated, "Yeah. Do what you want to do. How the hell you gonna have me go to trial when I ain't got no — my witnesses ain't present or nothing. This shit is unconstitution (SIC) — this shit you all doin' ain't right to a black man." Then he further commented, "What the fuck you talking about? This crazy ass court. This kangaroo ass court."
 {¶ 32} Spohn voiced her concern about the ethical harm she may cause to herself by advising appellant, because of appellant's statement that he did not want her representing him. The trial court continued the case on the basis of appellant's actions. The trial court then consolidated the two cases into one so that they could be tried together. Appellant replied in part to this by stating, "Hey, you know what? Anytime I get in front of you, they get fired. This case will not, ain't gonna be in front of you."
 {¶ 33} On June 26, 2000, Brad Bolinger was appointed to represent appellant. Bolinger was the sixth attorney to represent appellant, the fifth one appointed by the court.
 {¶ 34} On August 7, 2000, the trial court held a competency hearing. At that hearing appellant was found competent to stand trial. Further, appellant filed two motions pro se: a motion to suppress identity and a motion to suppress evidence. Appellant then withdrew the motion to suppress identity and a hearing date was set for the motion to suppress evidence. Thereafter, appellant attempted to fire Bolinger as his appointed counsel. The trial court replied, "He's not yours to fire. He's the Court's. And I'm not going to let you fire him." The trial court further admonished appellant, "You're allowed one bite of the apple. I was very lenient with you. I gave you several. We've come to the end of the line here." The trial court then set the trial date for September 27, 2000.
 {¶ 35} On September 27, 2000, the day of trial, Bolinger told the trial court that appellant wished him to withdraw as counsel. He also stated that he would like to withdraw as well because appellant refused to participate in his defense and had not discussed the factual issues of the incidents with him. Further, he stated that appellant wished to represent himself with Bolinger as his advisor.
 {¶ 36} The trial court determined that it would proceed with the trial and asked appellant whether he wanted Bolinger to act as his attorney or advisor. Appellant replied that he did not want him for his attorney, but that he did not want to represent himself either. The court then appointed Bolinger as appellant's advisor. The trial court also noted that appellant never gave the court a list of witnesses and their addresses for it to subpoena after having asked for it earlier.
 {¶ 37} The trial court warned appellant that if he acted up, he would be sent upstairs with a video and audio feed and a telephone so that he could participate in his defense without being present in the courtroom. After the jurors were brought in and seated appellant stated, "Before this gets started I would like to address the jurors and let them know, I'm no attorney. I, I don't want this attorney to represent me." Appellant continued by stating that it was unfair and he did not understand and that he did not want Bolinger for his attorney. The bailiff continued to ask appellant to sit down. Finally, at the trial court's direction, the bailiff asked the deputy to "take him out." On his way out, appellant stated, "Now I'm going upstairs to be, on account of the — electrocution belt that's on me." One juror questioned the court as to whether appellant had had other attorneys. The jurors spoke among themselves discussing this outburst during a bench conference. The trial court determined that the jury panel was tainted and declared a mistrial.
 {¶ 38} The state then asked whether two witnesses could be deposed for the following day. Nancy Kranpitz was the owner of the stolen car involved in the first instance and her daughter Crystal Kranpitz had been given permission to drive it. The state argued that they had come to all four previous trials and the witnesses had plans to leave town that night. Specifically that the mother, Nancy, would be on vacation. Bolinger objected, but the trial court overruled his objection and allowed the depositions to take place.
 {¶ 39} During the depositions, appellant remained in the room with the video and audio feed and had a telephone so that he could speak with Bolinger. Bolinger questioned the trial court as to how he was to relay appellant's questions to the witnesses for him, if he had to edit them for content as well. He stated that he would act differently as an advisor as opposed to as an attorney in that type of situation. The court replied, "He forfeited his right to act as his attorney when he got up and immediately contaminated the jury." Appellant commanded Bolinger not to ask any questions of the witnesses. Bolinger reluctantly followed appellant's command.
 {¶ 40} Nancy testified that she was the owner of the car and a title to the vehicle was entered for proof. She also stated she did not carry a gun or drug paraphernalia in the car. She further testified that her daughter, Crystal, had been in the process of purchasing the car from her and that she did not know appellant.
 {¶ 41} Crystal testified that she was purchasing the car from her mother and that she had allowed her boyfriend to drive the car. She testified that the car was stolen while her boyfriend was using it and that she reported it stolen. She further stated that she did not place a gun or drug paraphernalia in the car. Finally, she stated that she did not know appellant or give consent for him to use the car.
 {¶ 42} On September 28, 2000, before the jury was brought in, the trial court related that the deputies informed her that appellant had "stripped naked" and refused to put his clothes back on. The trial court determined that appellant would be tried in absentia. The trial court noted that if he did put his clothes back on and wished to consult with his attorney, he could go back to the room with the video and phone so that he could participate in his trial. The trial then proceeded with Bolinger actively participating as appellant's attorney.
 {¶ 43} The jury returned with a verdict of guilty on all the felony counts except the drug paraphernalia and driving when license suspended or revoked, both under the first incident. The trial court heard the misdemeanor charges at the same time as the felony jury trial, and found appellant guilty of all the misdemeanor counts.[2]
 {¶ 44} On October 2, 2000, the trial court merged the two counts of having weapons while under disability. The trial court then sentenced appellant to seven and a half years of imprisonment.[3] Appellant raises four assignments of error.
Assignment of Error No. 1:
 {¶ 45} "MR. PARRISH WAS DENIED A COMPLETE TRANSCRIPT OF THE PROCEEDINGS IN THE TRIAL COURT UPON HIS FIRST APPEAL AS OF RIGHT, IN VIOLATION OF HIS RIGHTS TO EQUAL PROTECTION AND DUE PROCESS OF LAW."
 {¶ 46} Appellant contends that he is entitled to a new trial because the audio recording system employed by the trial court denied him his constitutional right to a meaningful appeal. Appellant maintains that after supplementing the record, there are more than 250 omissions denoted as "unclear" or "inaudible" in the trial transcript.
 {¶ 47} The Ohio Rules of Criminal Procedure provide that all proceedings shall be recorded in all "serious offense cases." Crim.R. 22. However, the Ohio Supreme Court has held that even in capital cases, "[t]he requirement of a complete, full, and unabridged transcript in capital trials does not mean that the trial record must be perfect for purposes of appellate review." State v. Palmer, 80 Ohio St.3d 543,1997-Ohio-312, syllabus, certiorari denied, (1998), 525 U.S. 837,119 S.Ct. 96.
 {¶ 48} The Ohio Supreme Court stated in Palmer, that "[t]his court has clearly held that reversal of convictions and sentences on grounds of some unrecorded bench and chambers conferences, off-the-record discussions, or other unrecorded proceedings will not occur in situations where the defendant has failed to demonstrate that (1) a request was made at trial that the conferences be recorded or that objections were made to the failures to record, (2) an effort was made on appeal to comply with App.R. 9 and to reconstruct what occurred or to establish its importance, and (3) material prejudice resulted from the failure to record the proceedings at issue." Id. at 554.
 {¶ 49} We have found that "general allegations of prejudice that the missing information could be vital to [appellant's] appeal are not sufficient to show material prejudice." State v. Bell (Apr. 30, 2001), Butler App. No. CA99-07-122, discretionary appeal not allowed,93 Ohio St.3d 1412, citing to Palmer, 80 Ohio St.3d at 555; State v.DePew (1988), 38 Ohio St.3d 275, 279.
 {¶ 50} Here, appellant completed and supplemented the transcript in an effort to comply with App.R. 9. Originally there were 750 omissions, but after supplementation of the transcript, there were only 250 omissions notated as "unclear" or "inaudible." Although appellant has made an effort to comply with App.R. 9, appellant has not shown how he has been materially prejudiced due to these omissions.
 {¶ 51} Having completely reviewed the transcript, we find that the record is adequate for purposes of appellate review. The omissions were inconsequential and not germane as they related to appellant's appeal. Appellant's right of appeal was not prejudiced by the absence of a complete transcript of the proceedings. As such, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 {¶ 52} "MR. PARRISH'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO THE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN HE WAS TRIED WITHOUT THE BENEFIT OF COUNSEL AND IN THE ABSENCE OF A KNOWING, INTELLIGENT, AND VOLUNTARY WAIVER OF HIS RIGHT TO THE ASSISTANCE OF COUNSEL. (TRANSCRIPT OF 9/27/00 AT 10)"
 {¶ 53} Appellant contends that the trial court erred by allowing him to proceed pro se without validly waiving his Constitutional right to the assistance of counsel.
 {¶ 54} The Sixth and Fourteenth Amendments of the United States Constitution provide the right to the assistance of counsel in a criminal trial. For a waiver of this right to be valid, it must be knowing, intelligent and voluntary. State v. Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus, citing Faretta v. California (1975),422 U.S. 806, 95 S.Ct. 2525.
 {¶ 55} After fully reviewing the record, we find appellant's assignment of error is not well-taken. During appellant's fifth and final trial, which ended in the conviction appellant currently appeals, Bolinger was appellant's counsel of record. According to the transcript, before two prosecution witnesses were deposed for the fifth trial, the trial court stated, "[appellant] forfeited his right to act as his own attorney when he got up and immediately contaminated the jury."[4] Therefore, Bolinger was the attorney of record for appellant concerning all proceedings with appellant's final trial. Appellant's contention that he proceeded pro se is without merit. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 {¶ 56} "THE ADMISSION OF PRERECORDED AUDIO DEPOSITIONS INTO EVIDENCE WITHOUT A SPECIFIC FINDING OF WITNESS UNAVAILABILITY VIOLATED MR. PARRISH'S RIGHT TO CONFRONT HIS ACCUSERS AND DENIED HIM DUE PROCESS AND A FAIR TRIAL. (TRIAL TRANSCRIPT AT 158)"
 {¶ 57} Appellant contends that the trial court improperly allowed the prosecution to depose two witnesses without making a finding of their unavailability thereby denying him his Sixth and Fourteenth Amendment confrontation rights. He maintains that it was error for the trial court to allow this testimony to be entered at trial.
 {¶ 58} "If the error alleged is constitutional in nature, and if the court finds that there is overwhelming evidence of the appellant's guilt, disregarding the disputed material, then it must hold that there [sic] error is not prejudicial but harmless error beyond a reasonable doubt. If the court so finds, then it must affirm the judgment of the trial court." State v. Davis (1975), 44 Ohio App.2d 335, 344.
 {¶ 59} In order to present the prior testimony of a witness at trial, the court must make a finding of unavailability of that witness and then determine whether the testimony is reliable. Ohio v. Roberts
(1980), 448 U.S. 56, 66 100 S.Ct. 2531. A good faith effort must have been made to procure that witness' presence at trial. Id. at 74. "The lengths to which the prosecution must go to produce a witness * * * is a question of reasonableness." Id. citing to California v. Green (1970),399 U.S. 149, 189, 90 S.Ct. 1930.
 {¶ 60} In the present case, because of appellant's behavior and actions, there had been four prior mistrials and continuances. Two prosecution witnesses, Nancy and Crystal Kranpitz, had changed their schedules and had appeared at all of appellant's prior trials. The prosecutor related that they asked that they be excused from the fifth trial because they were going to be out of town and specifically that Nancy was going on vacation. The trial court granted their request and allowed the prosecution and defense to examine and cross-examine the witnesses for a deposition. The court did not make a specific finding that the witnesses were unavailable. Under these specific facts and circumstances of this case, we find that any error in allowing the depositions and admitting them at trial was harmless error and did not prejudice appellant.
 {¶ 61} The witnesses' testimony only concerned the first incident. This testimony was cumulative to that already given to the trial court. Nancy testified that she owned the vehicle. Documents from the Hamilton County Clerk of Courts, Auto Title Division, showing that Nancy was the owner of record of the stolen vehicle were admitted through her testimony. However, these documents were self-authenticating pursuant to Evid.R. 902(4) and so did not need to be entered through her testimony.
 {¶ 62} Crystal testified that she reported the car stolen. However, an officer testified that the vehicle was reported stolen and that he had verified the report. Furthermore, appellant did not comply with the officer's command to pull over when she turned on her lights, but instead fled in the vehicle. Therefore, there was overwhelming evidence, without Nancy's and Crystal's testimony, that appellant was guilty beyond a reasonable doubt of receiving stolen property.
 {¶ 63} Both Nancy and Crystal testified that the loaded gun and drug paraphernalia were not theirs as well. To be convicted for carrying a concealed weapon-loaded, all the prosecution had to prove was that appellant knowingly had concealed ready at hand a deadly weapon. R.C.2923.12(A). The arresting officer stated that appellant made movements towards the driver's seat, but that he could not see what appellant was doing. Another officer testified that a loaded gun was in the fold of the driver's seat. Therefore, neither Nancy's nor Crystal's testimony was necessary for the jury to find appellant guilty of carrying a concealed weapon.
 {¶ 64} Nor was Nancy's or Crystal's testimony about the gun necessary for appellant to be found guilty of having weapons while under disability. R.C. 2923.13(A)(2) provides that "no person shall knowingly * * * have * * * any firearm if such person * * * has been convicted of any felony of violence." Evidence was entered into trial that appellant had many prior felony convictions. Therefore, Nancy's and Crystal's testimony was unnecessary for the jury to find appellant guilty of this violation.
 {¶ 65} Under these specific facts and circumstances, we find that even after excluding Nancy's and Crystal's testimony, there was overwhelming evidence that appellant was guilty of these charges beyond a reasonable doubt. It was harmless error to allow the deposition testimony to be entered into the record. The deposition testimony did not prejudice appellant. As such, appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 {¶ 66} "MR. PARRISH WAS TRIED IN ABSENTIA, IN VIOLATION OF HIS RIGHT TO BE PRESENT AT HIS OWN TRIAL, TO CONFRONT WITNESSES AGAINST HIM, AND TO ASSIST IN HIS OWN DEFENSE. (TRIAL TRANSCRIPT AT 9)"
 {¶ 67} Appellant contends that the trial court erred by not allowing him to be present in the courtroom during his final trial. He argues that by trying him in absentia, the trial court violated his confrontation clause rights.
 {¶ 68} The Supreme Court has "explicitly" held that "[a] defendant may lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Illinois v. Allen
(1970), 397 U.S. 337, 343, 90 S.Ct. 1057.
 {¶ 69} Due to appellant's volatile and disruptive behavior throughout the legal process, which has been delineated above, we find appellant's contention has no merit. Appellant went through six attorneys. Furthermore, his actions caused mistrials and continuations of his trial dates. Throughout the trial process, he was warned numerous times to cease his disruptive behavior. On the day of appellant's final trial, he "stripped naked." It was his outrageous behavior that caused the trial court to have him removed from the courtroom. The trial court did give him the option of putting back on his clothes and participating in the trial by being in another room with a video and audio feed and phone so that he could consult with his attorney. It was proper for the trial court, under these facts and circumstances, to hold a trial in absentia. As such, appellant's fourth assignment of error is overruled.
The trial court's ruling is affirmed.
WALSH, P.J., POWELL and VALEN, JJ., concur.
[1] Although the transcript states that the date of this hearing as May 22, 2000, it was written in error. There is a reference in the transcript as to May 2 and 3 being in the future. Further, the trial was set for April 26, 2000, and there are references in the transcript that this hearing occurred before that trial date.
[2] The misdemeanor counts related to the second incident. They included two counts for disobeying traffic control devices and two counts for stop sign violation.
[3] Specifically, for the first incident, appellant was sentenced to: 15 months consecutive for receiving stolen property motor vehicle, 12 months consecutive for carrying a concealed loaded weapon, 12 months concurrent for having weapons while under disability, two years consecutive for failure to comply, and six months concurrent for improperly handling firearm in a motor vehicle. For the second incident, appellant was sentenced to: 15 months consecutive for receiving stolen property motor vehicle, six months concurrent for driving when license suspended or revoked and two years consecutive for failure to comply. On the misdemeanor charges for the second incident, appellant was ordered to pay the court costs for both counts of the stop sign violation and for both counts of obeying traffic control devices.
[4] Appellant correctly maintained in his brief that he was acting as his own counsel, without a knowing, intelligent and voluntary waiver of his right to counsel, during his fourth trial. However, because of appellant's statements and actions, the trial court found that the jury was contaminated during voir dire and so declared the fourth trial a mistrial.